FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 2 8 2005 ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

SIMON NEWMAN,

                Plaintiff,

   -against-

MICHAEL A. ZENK, et al.,

                Defendant.

------------------------------------------------------------------ X

05-CV-759 (ARR)(LB)

NOT FOR PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Simon Newman ("plaintiff"), proceeding *pro se*, commenced this action against Michael A. Zenk, former warden of the Metropolitan Detention Center, Brooklyn ("MDC") and Harley G. Lappin, Director of the Federal Bureau of Prisons on January 30, 2005, alleging violations of his First and Eighth Amendment rights and a common law tort claim for food poisoning.[1] Specifically, plaintiff complains that the denial of access to a "religious room" violated his First Amendment right to free exercise of religion, and that prison conditions – food of inadequate quality and quantity, and denial of medical care – violated his Eighth Amendment right to be free of cruel and unusual punishment and the "unnecessary and wanton infliction of pain." Defendants move to dismiss plaintiff's complaint under Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6). For the reasons discussed below, defendants' motion is granted in part and denied in part.

---

[1] Plaintiff does not clearly articulate the legal bases for his claims, beyond stating that the various prison conditions of which he complains "amount[] to cruel and unusual punishment." Complaint, p.6. Since plaintiff is proceeding *pro se*, this court reads his complaint as broadly as possible and addresses all possible claims included therein. Weixel v. Bd. of Educ., 287 F.3d 138, 145-6 (2d Cir. 2002).

1

## I. Factual Background

Viewing the evidence in the light most favorable to the plaintiff and drawing every inference in his favor, the court accepts the following facts for the purposes of this motion.

At the time that this complaint was filed, plaintiff was an inmate at the Metropolitan Detention Center, Brooklyn ("MDC"). While at MDC, plaintiff spent approximately five or six months in "punitive segregation." Complaint, 5. Plaintiff alleges that, while in punitive segregation, he was "half-starved... constantly being served cold and often uncooked food," such as "uncooked potato, bloody roast beef, hard-cold rice, cold oatmeal and grits, cold meatloaf and raw powder potato among other foods..." Id. at 5-6. Additionally, plaintiff claims that he was served "raw chicken and beef that is clearly spoiled as the foul smell gives a good indicator." Plaintiff's Reply to Defendant's Motion to Dismiss, 4. On at least one occasion, plaintiff was denied a meal. Complaint, 6. On other occasions, he "had to discard" the food he was served because he "could not eat raw food." Id. Due to this inadequate and uncooked food, plaintiff lost more than twenty pounds while in punitive segregation. Id. Plaintiff repeatedly complained about the food and filed numerous grievances, many of which were lost or ignored by MDC officials. Id. at 5-6.

Plaintiff cites two specific incidents in his complaint. On or about January 3, 2004, "Officer Smith (male)" served plaintiff cold meatloaf and then "slammed the slot shut in [his] face when [he] complained." Id. at 5. That night, plaintiff became ill; he suffered from "severe stomach pain, diarrhea, vomiting and weakness to lost (sic) of appetite." Id. Since the emergency buzzer in his cell was not working, plaintiff was unable to contact prison staff to receive medical

attention that night.[2] Id. He was seen by medical staff between 8:30 and 9:30pm the next day. Id. Plaintiff filed an administrative tort claim alleging food poisoning with regard to this incident. Id.

On or about October 3, 2004, MDC Officer Mandley served breakfast cold, denied some inmates their meals, and "locked up religious and activity rooms" to retaliate against inmates who had heckled him. Id. Plaintiff filed a grievance as to this incident, but got no reply. Id.

## II. Standard for Dismissal Under Rules 12(b)(1) and 12(b)(6)

When deciding a defendant's motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. Pro. 12(b)(1) and for failure to state a cause of action under Fed. R. Civ. Pro. 12(b)(6), a court must accept as true all material factual allegations in the complaint. Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998); Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

When deciding a defendant's motion to dismiss for failure to state a cause of action under Rule 12(b)(6), the court must draw all reasonable inferences in favor of the plaintiff. Hamilton Chapter, 128 F.2d at 63. A case should be dismissed under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The central question is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

---

[2]Plaintiff does not allege that Officer Smith was in any way involved in the time lapse between plaintiff feeling ill and receiving medical treatment. Plaintiff does not suggest that Officer Smith dismantled the buzzer, or even that Officer Smith was aware that the buzzer was not working. In fact, it is not clear from plaintiff's claim that Officer Smith remained on duty that night after serving plaintiff's meal.

3

In contrast, when considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court does not draw inferences favorable to the plaintiff. Shipping Fin. Serv. Corp., 140 F.3d at 131. Rather, the court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. Robinson v. Gov't of Malaysia, 269 F.3d 133, 141 n.6 (2d Cir. 2001); Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000).

Courts are particularly hesitant to dismiss actions filed by *pro se* litigants, as *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). "When considering motions to dismiss a *pro se* complaint such as this, 'courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s].'" Weixel, 287 F.3d at 145-6 (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)). The court's obligation to construe *pro se* complaints liberally is especially strong in civil rights cases. See Weixel, 287 F.3d at 146; Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001).

## III. Section 1983 Claims

Plaintiff filed his complaint on a form designated for use by prisoners filing complaints under the Civil Rights Act, 42 U.S.C. § 1983. Section 1983 provides relief against defendants who act under color of state, not federal, law. Wheedling v. Wheeler, 373 U.S. 647, 650 (1963). Since plaintiff was incarcerated in a federal facility and is suing federal officials, his claims under § 1983 must be dismissed.

However, because the plaintiff is proceeding *pro se*, this court will construe his § 1983 civil rights claims as the analogous claims applicable to federal actors under Bivens v. Six

4

Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Perez v. Hawk, 302 F. Supp. 2d 9, 18 (E.D.N.Y. 2004) (citing Liffiton v. Keuker, 850 F.2d 73, 78 (2d Cir. 1988) (finding that § 1983 action against federal defendants in their individual capacities may be entertained as a Bivens action which is not barred by sovereign immunity)); Daloia v. Rose, 849 F.2d 74, 75 (2d Cir. 1988) (construing *pro se* § 1983 action as Bivens action against federal defendants).

## IV. Bivens Claims

Several of plaintiff's claims may be construed as claims against the named federal officials under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Bivens claims cannot be maintained against the United States, its agencies, or its employees in their official capacities. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994). The doctrine of sovereign immunity bars suits against the United States absent consent; since suits against federal agencies and officers in their official capacities are essentially suits against the United States, they are also barred under sovereign immunity. Id. Therefore, this court construes all of plaintiff's potential Bivens claims as claims against the named officials in their individual capacities.

To maintain a Bivens action, a plaintiff must allege a violation by a federal official of a clearly established constitutional right for which the federal official does not have immunity. Siegert v. Gilley, 500 U.S. 226, 232 (1991). The federal official's personal involvement is a prerequisite to liability; under Bivens, federal officers who were not personally involved in the

5

alleged constitutional deprivation may not be held vicariously liable for the acts of subordinates. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987). Personal involvement may be demonstrated by evidence that (1) the defendant participated directly in the alleged infraction; (2) the defendant, with actual or constructive knowledge of the violation, failed to remedy the wrong; (3) the defendant created or permitted the policy or custom under which the unconstitutional practices occurred; (4) the defendant was grossly negligently in managing subordinates who caused the violations; or (5) the defendant failed to act on information indicating that the constitutional deprivations were taking place. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Plaintiff mentions two specific corrections officers – "Officer Smith (male)" and Officer Mandley – in his complaint, but fails to name them as defendants in this lawsuit. If a liberal reading of the complaint gave any indication that a valid claim might be stated against these officers, plaintiff would be invited to amend his complaint to name these two individual officers as defendants. Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991); see also Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"). However, as discussed below, plaintiff's complaint does not allege that the actions of either officer rose to the level of a constitutional violation.

**1. Violation of First Amendment Right to Free Exercise of Religion**

Plaintiff's claim that Officer Mandley "locked up religious... rooms" for two days in October 2004 may be construed as a Bivens claim alleging violation of plaintiff's right to free exercise of religion under the First Amendment. Complaint, p.6. Assuming *arguendo* that

6

plaintiff exhausted the required administrative procedures with regard to this claim,[3] this claim must nonetheless be dismissed for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6).

Plaintiff has not alleged that the named defendants were personally involved in Officer Mandley's decision to deny inmates' access to religious rooms. Plaintiff does not suggest that the named defendants were aware of Officer Mandley's actions, or that denying inmates access to religious rooms was a regular or common prison punishment. Since personal involvement is a prerequisite to liability under Bivens, plaintiff fails to state a claim against either former warden Zenk or BOP Director Lappin.

Plaintiff could seek to amend his complaint to name Officer Mandley as a defendant. However, although plaintiff claims that Officer Mandley was personally involved in denying plaintiff access to religious and activity rooms, this alleged deprivation does not rise to the level of a constitutional violation. The United States Court of Appeals for the Second Circuit has not

---

[3] A plaintiff must exhaust his or her administrative remedies as required by the Bureau of Prisons regulations before bringing a Bivens claim. See 28 C.F.R. § 542.10; 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). However, the United States Court of Appeals for the Second Circuit recently recognized that "certain caveats apply." Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004). "Non-exhaustion is an affirmative defense subject to estoppel in cases where prison officials inhibit an inmate's ability to utilize administrative grievance procedures." Nwaokocha v. Sadowski, 369 F. Supp. 2d 362, 368 (E.D.N.Y. 2005) (citing Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (per curiam)).

Defendant alleges that plaintiff failed to exhaust his administrative remedies with respect to many of his Bivens claims. Plaintiff, however, argues that he made every effort to exhaust the administrative grievance procedure: "I have exhausted what I could, though MDC Bklyn. is doing everything not to honor my grievances." Complaint, p.4. Plaintiff alleges that he filed repeated grievances on numerous issues, but that his grievances "never got any attention," "got no reply," and often "disappeared." Id., p.6. Plaintiff further asserts that "That is the policy here at MDC-Bklyn, if the grievance deals with a matter not to staff liking, then paperwork disappears." Id.

Since the standard of review on a motion to dismiss dictates that the court accept all allegations in the plaintiff's complaint as true, we assume for the purposes of this discussion that plaintiff did in fact adequately attempt to exhaust the required administrative procedures.

yet decided whether a plaintiff must demonstrate that the burden on his beliefs was "substantial" rather than "inconsequential" in order to state a constitutional claim. McEachin v. McGuinnis, 357 F.3d 197, 203 (2d Cir. 2004); Ford v. McGinnis, 352 F.3d 582, 592-93 (2d Cir. 2003).[4] Compare, e.g., Levitan v. Ashcroft, 281 F.3d 1313, 1320 (D.C. Cir. 2002) (concluding that challenged conduct must "impose a substantial, as opposed to inconsequential, burden on the litigant's religious practice."). In McEachin, however, the Second Circuit noted that "Rejecting the substantial burden test would not mean that every possible restriction on religious practices is a violation. There may be inconveniences so trivial that they are most properly ignored. In this respect, this area of the law is no different from many others in which the time-honored maxim *'de minimis non curat lex'* applies." 357 F.3d at 203 n.6.

The inconvenience potentially suffered by plaintiff due to the fact that inmates were denied access to a religious room for two days seems best characterized as an "inconvenience so trivial that [it is] most properly ignored." Id. Plaintiff does not allege that the fact that the room was locked impaired his ability to practice his religion; in fact, he does not claim that he wished to use the room while it was locked. Therefore, even if plaintiff were to amend his complaint to name Officer Mandley as a defendant, he could not successfully allege a constitutional violation.

---

[4]The government cites numerous cases in which district courts within the Second Circuit conclude that, to state a free exercise claim, inmates must demonstrate that state action "substantially burdened" their exercise of religion. Memorandum of Law in Support of Defendants' Motion to Dismiss, p.22. These district court decisions generally concluded that various alleged state actions were not sufficient to state a claim because the described actions did not "substantially burden" inmates' exercise of religion. Id. However, the cases cited by the government were all decided before the Second Circuit clearly stated, in both McEachin (2204) and Ford v. McGinnis (2003), that it had not yet decided whether a burden on religious beliefs had to be "substantial" in order to state a constitutional claim. Nor do any of the cited cases address whether the impediment at issue in this case, though less than a "substantial burden," was nonetheless sufficiently burdensome to state a First Amendment claim.

## 2. Violations of Eighth Amendment Right to Be Free of Cruel and Unusual Punishment

Prison conditions and the treatment of inmates are subject to scrutiny under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Both the Supreme Court and the U.S. Court of Appeals for the Second Circuit have repeatedly noted that, "while the Constitution 'does not mandate comfortable prisons,' prisoners may not be denied 'the minimum civilized measure of life's necessities.'" Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 and 347 (1981)). Under the Eighth Amendment, prisoners may not be deprived of their "basic human needs – e.g., food, clothing shelter, medical care, and reasonable safety." Phelps, 308 F.3d at 185 (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)).

### A) Inadequate Medical Attention

Plaintiff's complaint that he was unable to contact prison staff when he became ill on January 4, 2004 because the emergency buzzer in his cell was not working may be construed as a Bivens claim alleging inadequate medical attention. Complaint, p.5. Assuming *arguendo* that plaintiff exhausted the required administrative procedures with regard to this claim,[5] this claim must nonetheless be dismissed for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6).

Prison officials' denial of access to medical care or interference with prescribed treatment may constitute the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment." Perez, 302 F. Supp. 2d at 19 (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

---

[5] See footnote 3 for discussion of this assumption.

To establish an unconstitutional denial of adequate medical care, a plaintiff must demonstrate "deliberate indifference to [his] serious medical needs." Estelle, 429 U.S. at 104. "Deliberate indifference" includes both objective and subjective components. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Under the objective prong, the alleged deprivation must be "sufficiently serious." Id. (quoting Wilson v. Seiter, 501 U.S. 294 at 298 (1991)). Under the subjective prong, the named official must act with a sufficiently culpable state of mind. The official acts in a deliberately indifferent manner only when he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Mere negligence does not violate the Eighth Amendment. Davidson v. Cannon, 474 U.S. 344, 347-8 (1986).

Here, as in case of the alleged First Amendment violations, the plaintiff's claim must fail because plaintiff does not suggest that the named defendants were personally involved in the alleged denial of medical care. Plaintiff does not suggest that either former warden Zenk or BOP Director Lappin knew of or arranged for plaintiff's cell buzzer not to work; he also does not allege that these supervisors created an atmosphere or a pattern of neglect of inmates' medical needs at MDC Brooklyn. Further, even if plaintiff were to amend his complaint to name Officer Smith as a defendant, plaintiff has not alleged that Officer Smith knew that the buzzer did not work or that Officer Smith was responsible for plaintiff that night.

Even if plaintiff had successfully alleged defendants' personal involvement, the alleged deprivation of medical care would not rise to the level of a constitutional violation. First, the deprivation alleged by plaintiff is not sufficiently serious. "A medical condition is objectively

considered 'serious' if it is a 'condition of urgency' that may result in 'degeneration' or 'extreme pain.'" Perez, 302 F. Supp. 2d at 20 (citing Hathaway, 37 F.3d at 553). In this case, plaintiff alleges that he had "severe stomach pain, diarrhea, vomiting and weakness to lost (sic) of appetite." Complaint, p.5. Although certainly uncomfortable, these symptoms of gastrointestinal upset do not present a "condition of urgency." Perez, 302 F. Supp. 2d at 20. Second, plaintiff does not allege that prison officials acted with the requisite deliberate indifference. Plaintiff does not suggest that prison officials were aware of any potential risk to his health on the night of January 4, 2004; in fact, his complaint is that the non-functional buzzer in his cell made it impossible for him to make them so aware. According to plaintiff's complaint, once prison officials were aware of plaintiff's illness, he was seen and treated by medical staff (within 24 hours of the onset of his illness).

## B) Inadequate Quantity and Quality of Food

Plaintiff's repeated complaints about the quality and quantity of food served to him while he was an inmate at MDC Brooklyn may state a Bivens claim. The Eighth Amendment prohibition against cruel and unusual punishment requires that inmates be provided with "'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (quoting Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981)). The Second Circuit has previously noted that "under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." Robles, 725 F.2d at 15. Although plaintiff's complaints about the

11

quality and quantity of food served at MDC Brooklyn may not survive discovery and later court proceedings, plaintiff has alleged sufficient facts to withstand defendants' motion to dismiss at this time.

The procedural prerequisites for suit are satisfied here. Defendants agree that plaintiff has exhausted the required administrative grievance procedures with regard to his general complaint about the quantity and quality of food served to him during his incarceration at MDC. Memorandum of Law in Support of Defendants' Motion to Dismiss, 11.

Defendants argue that this claim should be dismissed due to lack of personal involvement by the named defendants. However, plaintiff alleges that the quality and quantity of food served at MDC Brooklyn is a continuous and ongoing problem, rather than a few isolated incidents. He also claims to have communicated his displeasure and concerns about the food to numerous officials throughout the chain of command, including the Warden, "Regional," and "Washington." Complaint, p.6. As a result, plaintiff has alleged sufficient facts to suggest defendants' personal involvement under the following Colon v. Couglin scenarios: a) defendants "with actual or constructive knowledge of the violation, failed to remedy the wrong," b) defendants "created or permitted the policy or custom under which the unconstitutional practices occurred," and c) defendants "failed to act on information indicating that the constitutional deprivations were taking place." 58 F.3d at 873.

Eighth Amendment claims regarding the quality and quantity of food provided to prison inmates, like those relating to medical care, contain both objective and subjective components. To establish the objective element, plaintiff must prove that the conditions of his confinement "violate contemporary standards of decency." See Phelps, 308 F.3d at 185; Helling, 509 U.S. at

35-36; Rhodes, 452 U.S. at 347. To successfully show that food-related prison conditions violate the Eighth Amendment, plaintiff must demonstrate that "the food served to inmates is nutritionally inadequate, and that it is served under conditions that present an immediate danger to the health and well-being of those inmates." Phelps v. Kapnolas, No. 94-CV-7543, 2005 WL 1313444, at *5 (W.D.N.Y., June 1, 2005) (quoting Leach v. Dufrain, 103 F. Supp. 2d 542, 547 (N.D.N.Y. 2000)). To establish the subjective element, plaintiff must demonstrate that prison officials acted with "a sufficiently culpable state of mind," which the courts have defined as "deliberate indifference" to an inmate's health or safety. Farmer, 511 U.S. at 834. The standard for "deliberate indifference" with respect to food is the same as that related to inadequate medical care. To find an official liable under the Eighth Amendment for denying an inmate humane conditions of confinement, the court must conclude that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Phelps, 308 F.3d at 185-86 (quoting Farmer, 511 U.S. at 837).

In the instant case, plaintiff has pleaded sufficient facts with regard to both the objective and subjective elements of the Eighth Amendment violation to withstand defendants' motion to dismiss.

Taken alone, plaintiff's complaints about cold food and occasional missed meals would not satisfy the objective element; numerous courts have concluded that cold food – though possibly unappetizing – does not pose a risk to inmates' health and safety. See, e.g., Waring v. Meachum, 175 F. Supp. 2d 230, 238 (D.Conn.2001) ("The provision of cold food is not, by itself, a violation of the Eighth Amendment as long as it is nutritionally adequate and is prepared

13

and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."); Darting v. Farwell, 139 Fed. Appx. 847, 847 (9th Cir. 2005) (concluding that inmate's deprivation of single meal did not constitute injury serious enough to support Eighth Amendment claim).[6] Nor would allegations of occasional instances of uncooked or spoiled food be sufficient to withstand defendants' motion to dismiss. See, e.g., Lunney v. Brureton, No. 04-2438, 2005 WL 121720, *6 (S.D.N.Y., Jan. 21, 2005) ("Insofar as Lunney alleges that the food in the prison was merely cold, or that spoiled food was only served on a few occasions, he fails to state a cause of action.")

Here, however, plaintiff alleges that he was "often" served "uncooked food," Complaint, p.5, and "raw, uncooked food." Plaintiff's Response to Notice of Defendants' Motion to Dismiss, p.4. Additionally, plaintiff suggests that he was routinely served "raw chicken and beef that is clearly spoiled as the foul smell gives a good indicator." Id. Plaintiff further alleges that the inadequate food preparation procedures "caused [him] to be sick on more than one occasion," that he frequently "had to discard" the food he was served because he "could not eat raw food," and that combined problems with the MDC food caused him to lose more than twenty pounds. Complaint, p.6. Courts have previously found that allegations that a prison routinely serves

---

[6]It is worth noting that, if plaintiff were to seek to amend his complaint to name Officers Smith and Mandley as defendants in his Bivens claim for Eighth Amendment violations associated with the quality and quantity of MDC food, the allegations against them would not suffice to state a claim. The only claim against Officer Smith mentioned in plaintiff's complaint is that he served the plaintiff cold meatloaf on one occasion. Similarly, the only allegations against Officer Mandley are that he served plaintiff cold food and denied him a meal on one occasion. The claims against Officers Smith and Mandley would therefore have to be dismissed for failure to state a claim, since neither serving cold food nor denying an inmate one meal rises to the level of a constitutional violation. See, e.g., Waring, 175 F. Supp. 2d at 238; Darting, 139 Fed. Appx. at 847.

spoiled and nutritionally inadequate food is sufficient to state a claim under the Eighth Amendment. See, e.g., Lunney, 2005 WL 121720, *6 (finding allegations that food was "regularly spoiled and/or improperly prepared on 'numerous occasions'" sufficient to state an Eighth Amendment claim); Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996) (finding that allegations of "ransid (sic) food" and a "nutritionally deficient" diet stated an Eighth Amendment claim).

Plaintiff has also alleged sufficient facts to support the subjective element of this Eighth Amendment claim. Assuming that the facts presented by plaintiff are true, plaintiff complained to prison officials, the warden, "Regional," and "Washington" about the inadequate quantity and quality of food he received at MDC Brooklyn. If, as plaintiff alleges, the food served to prison inmates was frequently spoiled and inadequately cooked, prison officials should have been aware that the food posed an excessive risk to inmates' health and safety. "A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.

Defendants argue that, if the court finds that a potential Eighth Amendment violation exists, they should be shielded under qualified immunity. "The doctrine of qualified immunity protects government officials [in their individual capacities] from suits for money damages where 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Nwaokocha, 369 F. Supp. 2d at 369. Assuming that the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation, the issue to be resolved with regard to qualified immunity is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Sira v.

Morton, 380 F.3d 57, 68-69 (2d Cir. 2004). Where, as here, the subjective element of the Eighth Amendment violation is found to be adequately pleaded, plaintiff has also sufficiently alleged that prison officials were aware that the food in question posed an excessive risk to inmates' health. Accordingly, plaintiff has sufficiently alleged that a reasonable officer should have known that his conduct in allowing such food to be served was unlawful.

## V. FTCA Food Poisoning Claim

Plaintiff's FTCA claim alleging the common law tort of food poisoning is dismissed under Fed. R. Civ. Pro. 12(b)(1) for lack of subject matter jurisdiction, because the claim is time-barred due to plaintiff's failure to commence his civil action within six months after his administrative claim was denied.

Compliance with the FTCA statute of limitations is a jurisdictional prerequisite to suit. Solomon v. U.S., 566 F. Supp. 1033, 1035 (E.D.N.Y. 1982). Section 2401(b) of 28 U.S.C. provides that:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

To meet this jurisdictional requirement, the claimant must both (1) present his claim to the appropriate federal agency within two years of the incident and (2) commence his civil action within six months after the agency denies his claim. See Willis v. U.S., 719 F.2d 608, 612 (2d Cir. 1983) (finding that the term "or" between the two requirements should be read to mean

"and"); In re Agent Orange Product Liability Litigation, 818 F.2d 210, 215 (2d Cir. 1987). See also Ramming v. U.S., 281 F.3d 158, 162 (5th Cir. 2001) ("Although phrased in the disjunctive, 'this statute requires a claimant to file an administrative claim within two years [of accrual] and file suit within six months of its denial.'"). A civil action commenced more than six months after plaintiff's administrative claim was denied by the relevant federal agency must therefore be dismissed for lack of jurisdiction. See, e.g., Santiago v. U.S., No. 02-4896, 2004 WL 758196, at *1 (E.D.N.Y., Jan. 28, 2004); Long v. Card, 882 F. Supp. 1285 (E.D.N.Y. 1995).

Plaintiff does not include any details about his administrative tort claim in his complaint. However, defendants, in support of their Motion to Dismiss, submitted copies of plaintiff's administrative tort claim, the BOP's denial letter for plaintiff's tort claim, and the Acknowledgment of Receipt form signed by plaintiff. When considering a motion to dismiss under Fed. R. Civ. Pro. 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. Robinson, 269 F.3d at 141 n.6; Makarova, 201 F.3d at 113.

According to the records submitted by defendants, plaintiff submitted his administrative tort claim on January 16, 2004. Declaration of AUSA Steven M. Warshawsky in Support of Defendants' Motion to Dismiss, Ex. 5, p.1. Plaintiff's tort claim was denied on June 17, 2004. Id., Ex. 6, p.1. In the June 17, 2004 memorandum informing plaintiff that his claim had been denied, BOP Regional Counsel Henry Sadowski notified plaintiff that a civil action appealing the administrative decision had to be filed within six months: "If you are dissatisfied with this decision, you may seek reconsideration from this office or bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this

memorandum." Id. Plaintiff signed the form acknowledging receipt of the memorandum denying his claim on July 9, 2004. Id., p.2.

Plaintiff's complaint in this action is dated January 30, 2005 (Complaint, p.6), and was filed on February 3, 2005. Id., p.1. Therefore, plaintiff's complaint was filed more than six months after the administrative decision was made on June 17, 2004 and more than six months after plaintiff received notification of the denial on July 9, 2004. Accordingly, Plaintiff's FTCA is dismissed for lack of subject matter jurisdiction.

## VI. Conclusion

For the reasons stated above, defendants' motion to dismiss is granted with respect to plaintiff's Bivens claim under the First Amendment, Bivens claim under the Eighth Amendment alleging inadequate medical treatment, and FTCA claim alleging food poisoning. Defendants' motion to dismiss is denied as to plaintiff's Bivens claim under the Eighth Amendment relating to the quality and quality of food served to him while he was incarcerated at MDC Brooklyn.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: September 27, 2005
Brooklyn, New York

18

SERVICE LIST:

        Simon Newman, *pro se*
        #41405-054
        United States Penitentiary-Hazelton
        P.O. Box 2000
        Bruceton Mills, WV 26525

        Steven Michael Warshawsky
        US Attorneys Office
        147 Pierrepont Plaza
        Brooklyn, NY 11201
        718-254-6060
        Fax: 718-254-7489

cc:        Magistrate Judge Lois Bloom